UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

| | |
|---|---|
| GAYLON MURRAY, | ) |
| | ) |
| Plaintiff, | )   Case No. 3:22-CV-00151-BSM |
| | ) |
| v. | ) |
| | ) |
| DELTA ASPHALT OF ARKANSAS, INC., | ) |
| | ) |
| Defendant. | ) |

**TRIAL BRIEF OF DEFENDANT DELTA ASPHALT OF ARKANSAS, INC.**

**INTRODUCTION**

This matter is before the Court on a complaint filed by Plaintiff against Delta Asphalt of Arkansas, Inc. ("Delta") claiming violations of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. §201, *et seq.*) ("FLSA"), and the Minimum Wage Act of the State of Arkansas (Ark.Code Ann. §11-4-201 *et seq.*) ("AMWA") for alleged failure to pay him overtime compensation. Plaintiff filed the Complaint on July 22, 2022 following his resignation from employment with Delta in June 2022. The following discussion explains the factual and legal issues in dispute and their applicable legal standards, and discusses any significant evidentiary questions which may be an issue at trial.

**FACTUAL BACKGROUND**

The factual background relating to these claims, and what Delta expects to provide at trial, is set out in detail in Delta's Proposed Findings Of Fact And Conclusions Of Law filed herewith. Rather than repeat those facts in detail here, Delta refers the Court to that pleading and summarizes below the principal evidence Delta expects to present at trial.

Plaintiff was formerly employed by Delta as a Construction Foreman in its business of constructing, repairing and resurfacing roadways. He worked as a Construction Foreman from 2004 until he resigned in June 2022. In that position, the evidence is expected to show that Plaintiff was responsible for supervising

and managing a road construction crew that performed government contracts to construct, repair and/or overlay asphalt on highways in the State of Arkansas. And, in that capacity, Plaintiff was the Manager on site for his crew, and operated with no daily on-site supervision. Evidence will be presented that Plaintiff determined who performed what duties, how they performed their duties, when the operations started and finished for the day, how to allocate work, and how to perform the work within the specifications. Plaintiff was responsible for training, directing, and the safety of crew employees on site. To the extent Plaintiff elected to perform non-exempt work in addition to his other supervisory and related administrative duties, this was done because Plaintiff elected in his discretion to perform those tasks.

Plaintiff, like all other Construction Foremen, was paid on a salaried basis. He was paid in excess of $48,000 at all times relevant to the claims asserted. Plaintiff was paid throughout the year regardless of whether there was any work to be performed during any work week, including in the Winter and late Fall months when weather would not permit laying asphalt. When the crews were not working in Winter and late Fall, Plaintiff would have only limited and occasional duties to perform. Plaintiff had four weeks of paid vacation each year as well.

Delta determined that Plaintiff was an exempt employee for purposes of the relevant FLSA and AMWA statutory provisions and regulations and did so based on a good faith and reasonable review of the duties and responsibilities of a Construction Foreman under the relevant statutory provisions and regulations. During the 17+ years he was employed by Delta and paid a salary Plaintiff never claimed to the Department of Labor, the State of Arkansas, or Delta Human Resources or management, that he was owed overtime compensation.

## RELEVANT LEGAL ISSUES AND STANDARDS

The principal issue in this case is whether Plaintiff was exempt from the overtime compensation requirements of the FLSA and the AMWA. Delta expects to prove at trial that (i) Plaintiff was employed in a bona fide executive capacity, or in the alternative, had job functions that consisted primarily of a combination

of executive and administrative duties, and (ii) at all times relevant to this case, Plaintiff was exempt from the overtime requirements of the FLSA and AMWA, and is not entitled to overtime pay under either statute nor entitled to any of the damages or relief sought in this case.

### A. Overtime Pay Requirements Under the FLSA

The FLSA requires the payment of overtime compensation at 1 ½ times an employee's regular rate of pay for all hours worked in excess of 40 in a work week unless an exemption applies. 29 U.S.C. § 207(a). A two year statute of limitations applies dating from the date suit is filed. The limitations period is extended to three years in the case of a willful violation. 29 U.S.C. § 255(a). *See also McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988).[1]

### B. Plaintiff's Claims Under the FLSA Will Fail

Under 29 U.S.C. § 213(a)(1), the FLSA's overtime pay requirements "shall not apply with respect to any employee employed in a bona fide executive, administrative, or professional capacity[.]" *See also Madden v. Lumber One Home Ctr., Inc.*, 745 F.3d 899, 901 (8th Cir. 2014). "The employer has the burden to

---

[1] In cases where a non-exempt employee was paid a set salary for a workweek, the U.S. Supreme Court has held, and the Wage and Hour Division has made clear, that the only overtime owed is ½ the person's regular rate for hours worked in excess of 40 in a work week. *Overnight Motor Transp. Co., Inc. v. Missel*, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942) superseded on other grounds by statute. *See also* 29 C.F.R. § 778.114; Wage and Hour Division Field Operations Handbook, Ch. 32(b)(4)(b). This is based on the conclusion that the employee already has been paid for all hours worked and therefore only the ½ overtime premium is owed. On a claim for unpaid overtime compensation, misclassifying an employee as exempt does not by itself give rise to an employer's liability; rather, the employer will be liable for damages only if the employee worked overtime hours for which the employer, owing to that misclassification, failed to pay him an overtime premium. The Eighth Circuit has consistently applied the Fluctuating Work Week ("FWW") method in these types of misclassification cases. *See, e.g. Landreth v. Ford, Bacon & Davis*, 147 F.2d 446, 448 (8th Cir.1945); *Anderson v. Federal Cartridge Corp.,* 156 F.2d 681, 685 (8th Cir.1946); *Mumbower v. Callicott*, 526 F.2d 1183, 1187 (8th Cir.1975) ("For employees paid weekly, absent explicit proof of a mutual agreement for a rate of pay capable of delineation in hourly terms, the court must infer that the 'regular rate' is substantially that calculated by dividing the total weekly compensation by the number of hours scheduled in the workweek.") It is clear here that any recovery by Plaintiff should be calculated using the FWW method as described above. *Id.* Further, the evidence is expected to show from Plaintiff's daily reports that he According to Plaintiff's daily diary reports, he only worked four or more shifts per week in 66 out of 146 work weeks during the last three years of his employment and worked less than two shifts per week in 36 of his last 38 weeks of employment. This seriously undermines Plaintiff's alleged calculation of overtime compensation.

prove that its employee is an executive and therefore exempt from the FLSA's overtime pay requirements." *Madden*, 745 F.3d at 903. Although the employer has the burden of proof with respect to the exemption question, the U.S. Supreme Court has rejected the argument that the exemption should be strictly construed. *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 200 L. Ed. 2d 433 (2018). Instead, the exemptions should be given a "fair reading."

To fall within the executive or administrative exemption under the FLSA, "an employer must establish that the employee's 'primary duty' is the performance of exempt work, 29 C.F.R. § 541.700; that he is paid not less than the minimum salary level, § 541.600; and that he is paid on a 'salary basis,' § 541.602." *Coates v. Dassault Falcon Jet Corp.*, 961 F.3d 1039, 1042 (8th Cir. 2020). *See also Elliott v. Reynolds Metals Co., LLC,* No. 20 C 5689, 2023 WL 4625862 (N.D. Ill. July 19, 2023)(interpreting the FLSA and the AMWA).

The evidence is expected to prove that Plaintiff is exempt from the FLSA's and AMWA's overtime pay requirements because he meets the U.S. Department of Labor's ("DOL") test for the executive exemption under 29 C.F.R. § 541.100(a) as detailed below:

(1) Compensated on a salary basis at a rate of not less than $684 per week ... ;

(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

Under the regulations, an employee is paid on a salary basis "if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a).

As Plaintiff acknowledged in his deposition, during the relevant period, Plaintiff was paid "on a salary basis" in an amount far exceeding $684 per week. The evidence will show from payroll records that Plaintiff was paid a salary at an annual rate of $ 68,234.31 in 2019, $68,899.54 in 2020, and $ 71,022.54 in 2021, and $73,021 in 2022. *See* Plaintiff Pay Records, Delta 7, 20, 33, 39. Even where Plaintiff's salary was the lowest in 2019, his salary was equivalent to $1,312.20 per week, almost double the amount necessary under the prong 1 of the executive exemption test.

For purposes of prong 2 of the executive exemption test, an employee's "primary duty" is "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). "Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a).

The DOL's regulations identify a non-exhaustive list of activities that constitute "management" including: training of employees; setting and adjusting their ... hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures. 29 C.F.R. § 541.102. Delta will prove that Plaintiff's responsibilities entailed a significant number of these management-related duties.

The regulations also provide that exempt executive employees may make the decision to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing nonexempt work. 29 C.F.R. § 541.106. In addition, the evidence is expected

to show that their was a marked difference between Plaintiff's salary and the average hourly rate of pay for all Arkansas road construction crew laborers. The wage differential between Plaintiff and the next highest paid crew member doing similar nonexempt work is relevant in demonstrating the premium that Delta was paying Plaintiff for his exempt duties/supervisory functions. This wage differential further defeats Plaintiff's claim that he is non exempt because of the non-exempt work he allegedly performed. 29 C.F.R. § 541.700.

Further, exempt work for an executive employee includes activities directly and closely related to management functions. 29 C.F.R. § 541.702. Under the regulations, "directly and closely related" means tasks that are related to exempt duties and that contribute to or facilitate performance of exempt work and specifically include recordkeeping such as keeping time and production records for subordinates, distributing materials or supplies, and checking the work of subordinates to determine whether they are performing their duties properly. 29 C.F.R. § 541.703.

In this case, Delta will show through evidence that Plaintiff's primary duty was the management of his assigned road construction crew and his responsibility to direct and oversee the safe performance of the work in accordance with the contract specifications, as well as a significant number of other responsibilities which primarily included exempt work or work directly-related to exempt work. [2]

Under prong 3 of the DOL regulations, to be an exempt executive, an employee must direct the work of two or more employees "customarily and regularly," which "means a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. The evidence is expected to show that Plaintiff "customarily and regularly" directed the work of at least two other full-time employees,

---

[2] In interpreting an employee's "primary duty," the regulations do not require that more than 50% of an employee's time must be devoted to exempt work. 29 C.F.R. § 541.700(c) ("Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement"). *See also* 29 C.F.R. §541.601(c); *Smith v. Ochsner Health Sys.*, 956 F.3d 681, 685 (5th Cir. 2020); *Velazquez-Fernandez v. NCE Foods, Inc.*, 476 F.3d 6 (1st Cir. 2007); *Thomas v. Speedway SuperAmerica, LLC,* 506 F.3d 496 (6th Cir. 2007); *Elliott v. Reynolds Metals Co., LLC*, No. 20 C 5689, 2023 WL 4625862 (N.D. Ill. July 19, 2023).

including consistently being placed in charge of directing the work of full crews of employees ranging in various numbers depending on the assignment.

Finally, for purposes of the prong 4 above, the DOL's regulations identify several factors to consider when determining whether an employee's suggestions and recommendations regarding hiring, firing, advancement, promotion, or other changes of status are given "particular weight", including "whether (1) it is part of the employee's job duties to make such suggestions and recommendations; (2) the frequency with which such suggestions and recommendations are made or requested; and (3) the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105. There is no set number of personnel decisions for which an employee must make a recommendation to be exempt. The Eighth Circuit holds that involvement in "at least one" is sufficient to make an employee exempt. *Madden*, 745 F.3d at 908. *See also Stofer v. James Greene & Assocs., Inc.*, No. 4:20-CV-00027-KGB, 2021 WL 1148708 (E.D. Ark. Mar. 25, 2021); *Johnson v. Derhaag Motor Sports, Inc.*, No. 13-CV-2311 SRN/FLN, 2014 WL 5817004 (D. Minn. Nov. 10, 2014).

"An employee's suggestions and recommendations may still be deemed to have *particular weight* even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." 29 C.F.R. § 541.105 (*emphasis added*). As the Eighth Circuit explained in *Madden*, "many different employee duties and levels of involvement can work to satisfy this fourth element." *Madden*, 745 F.3d at 904. S*ee also Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881 (8th Cir. 2016) ("Demonstrating that the purported executives' input into personnel decisions were given particular weight can be established by showing 'that the purported executives' input had more influence than hourly employee'[s] input"). Evidence that satisfies the fourth prong includes "witness testimony that recommendations were made and considered; the exempt employee's job description listing responsibilities in this area; the exempt employee's performance reviews documenting the employee's activities in this area; and other documents regarding promotions, demotions or other change of

status that reveal the employee's role in this area." Defining and Delimiting the Exemptions, 69 Fed. Reg. 2004 at 22,135.

Delta will present evidence that Plaintiff, as part of his job duties, provided recommendations and suggestions regarding numerous changes of status for his subordinates, including (1) evaluating employees for the purpose of deciding to retain or discharge those employees, (2) recommending pay increases, determining an employee's qualifications for a promotion or a demotion, (3) and recommending temporary staffing employees for full employment. An employer's reliance on supervisors' recommendations regarding employee statuses "comports with the regulatory requirement that an executive's suggestions and recommendations as to hiring 'are given particular weight.'" *Beauchamp v. Flex-N-Gate LLC*, 357 F. Supp. 2d 1010, 1016 (E.D. Mich. 2005). *See Rainey v. McWane Inc.*, 314 F. App'x 693, 696 (5th Cir. 2009) (per curiam) (holding that an employee meets the fourth prong by providing recommendations for the hiring of probationary employees as full-time employees).

In addition, "[t]he regulations allow combining the exempt work from one section to the exempt work of another section. 29 C.F.R. § 541.600(a). Thus, an employee whose primary duty is neither management nor administration may fall under a combination exemption based upon his administrative and management responsibilities." *Auer v. Robbins*, 65 F.3d 702, 722 (8th Cir. 1995), aff'd, 519 U.S. 452, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997). *See* 29 C.F.R. § 541.708. United States Department of Labor ("DOL") regulations define an administrative employee as someone:

(1) Compensated on a salary or fee basis at a rate of not less than $684 per week ..., exclusive of board, lodging or other facilities;

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

8

Plaintiff's salary far exceeded the "salary basis" test during the relevant time-period. Plaintiff also had administrative duties for purposes of establishing a combination exception. In interpreting the third prong of the above standard, "the DOL has explicitly stated that 'the term 'discretion and independent judgment' does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review." *Stofer v. James Greene & Assocs., Inc.*, No. 4:20-CV-00027-KGB, 2021 WL 1148708, at *10 (E.D. Ark. Mar. 25, 2021) (quoting 29 C.F.R. § 541.202).

Here, Plaintiff consistently exercised discretion and independent judgment over matters that were integral to Delta's operations such as when his crew would start and finish work on a daily basis, how and by whom work would be performed, when materials should stop being distributed to his work sites, and key decision-making in guaranteeing the safety of his crew. Thus, Delta will be able to establish that Plaintiff was still properly classified as exempt under a combination of the executive and administrative exemptions.

### D. Plaintiff's Claims Under The AMWA Also Will Fail

Like the FLSA, the overtime compensation requirement of the AMWA do not apply to "[a]ny individual employed in a bona fide executive, administrative, or professional capacity." Ark. Code Ann. § 11-4-203. This language tracks the same exemption language in the FLSA.

When determining whether an employee is exempt, Arkansas courts lean heavily on federal law. In fact, the Arkansas Department of Labor ("Arkansas DOL") has gone so far as to expressly adopt the federal regulations that determine the application of those exemptions. *See* 010.14 Ark. Code R. § 106(B)(1)(a). In addition, Arkansas DOL regulations provide that: "The department may rely on the interpretations of the U.S. Department of Labor and federal precedent established under the Fair Labor Standards Act in interpreting and applying the provisions of the Act and Rule 010.14-100 through -113, except to the extent a different interpretation is clearly required." 010.14 Ark. Code R. § 106(B)(1) (a), *See Hicks v. Lindsey Mgmt. Co.*, No. 3:18-CV-00133 KGB, 2020 WL 13702480 (E.D. Ark. Apr. 23, 2020) ("there is no need to separately and distinctly evaluate these [FLSA and AMWA] claims, as the facts arising under each claim are the same and

9

the requirements under each law are the same." Thus, for the same reasons described in Section A above, Plaintiff also was exempt from the AMWA and Plaintiff is not entitled to any damages.

### E. If Plaintiff Were Not Exempt Under The FLSA, Delta's Good Faith And Lack Of Willfulness Limits The Statute Of Limitations To Two Years And Gives The Court Discretion In Limiting Liquidated Damages Under The FLSA.

The FLSA contains a two-tiered statute of limitations. An action ... to enforce any cause of action for ... unpaid overtime compensation ... may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued. 29 U.S.C. § 255(a). Under 29 C.F.R. § 790.21(b)(1), a cause of action for unpaid overtime compensation " 'accrues' when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends," and "an action to enforce such a cause of action shall be considered to be 'commenced' ... [i]n individual actions, on the date the complaint is filed").

The FLSA ties the determination of which statute of limitations period applies to a factual finding that the employer has committed a "willful violation" of the FLSA. *See Longlois v. Stratasys, Inc.*, 88 F. Supp. 3d 1058, 1080 (D. Minn. 2015); *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988); *Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 617, (E.D. Va. 2014) ("Courts have found employers willfully violated FLSA where they ignored specific warnings that they were out of compliance, destroyed or withheld records to block investigations into their employment practices, or split employees' hours between two companies' books to conceal their overtime work").

Here, Plaintiff did not provide notice to Delta, Human Resources or otherwise, of any complaints regarding overtime compensation or his status as an exempt employee prior to his separation and subsequent filing of the instant action. Further, Delta received no warnings from the Department of Labor or otherwise regarding their compliance, took no actions to destroy records or conceal wage practices to deter

investigation, and reasonably believed at all times that their wage actions were compliant with applicable statutes and regulations.

In addition to unpaid overtime compensation, the FLSA provides that a successful claimant can recover liquidated damages "in an additional equal amount." 29 U.S.C. § 216(b). Liquidated damages in this context are not a punitive measure against the employer, but are rather considered to be compensation "for the delay in payment of wages owed" to the employee. *Chao v. Barbeque Ventures, LLC,* 547 F.3d 938, 941 (8th Cir. 2008) (internal quotation omitted). However, under the FLSA, where "the employer shows to the satisfaction of the court that the act or omission giving rise to [the employee's] action [for unpaid overtime compensation] was in good faith and that [the employer] had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title." 29 U.S.C.A. § 260.

Delta will be able to prove good faith here because after evaluating the job duties and responsibilities of the Construction Foreman, and in turn the duties and expectations of Plaintiff, determined that Plaintiff was exempt from FLSA overtime requirements under the executive exemption. This determination was reasonable because Delta determined Plaintiff's primary duty was overseeing and managing and directing road construction crews and was performing supervisory functions including but not limited to determining which of his crew members performed what duties, how they performed their duties, when daily operations started and finished, work allocations, and how to perform work within specifications, as well as being responsible for training, directing, safety of crew employees on site, and providing recommendations to be used for employment and benefit determinations.

## EVIDENTIARY ISSUES

In 2002, Plaintiff plead guilty to Conspiracy to Commit an Offense Against the United States, a Class D Felony, which included proving the dishonest act of conspiring to defraud the government. This conviction

was not specifically identified in response to an interrogatory. Delta anticipates that Plaintiff will contest the admissibility and use of this conviction for purposes of contesting Plaintiff's credibility with respect to his testimony as to the duties he performed and the hours he purportedly worked. Any such objection should be overruled.

Under Federal Rules of Evidence Rule 609(a), a witness's character for truthfulness may be attacked by evidence of a felony criminal conviction or "for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving--or the witness's admitting--a dishonest act or false statement." "The underlying premise for Rule 609 is that some criminal convictions are indicative of a character for dishonesty or willingness to flaunt the law (including an oath) such that jurors are entitled to know of the character trait to be able to weigh the witness's credibility. In simple terms, a conviction for any crime punishable by more than one year, that is a felony conviction, is admissible for this purpose, regardless of the type of crime committed, while other convictions of equal or lesser punishment are admissible only if the elements include a dishonest act or false statement." *Arnzen v. Tyson Foods, Inc.*, No. 18-CV-4060-CJW-MAR, 2020 WL 10486712, at *2 (N.D. Iowa Jan. 21, 2020). Under Rule 609(b), the Court may admit evidence of a conviction more than 10 years old if "(1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use."

Evidence of this conviction directly bears on the credibility of Plaintiff's testimony on critical issues in this case as to his primary duty, the work he performed, and the hours he purportedly worked. Give that Plaintiff is expected to principally rely on his own testimony to prove his claims, making his character for truthfulness vitally important to this case. As such, it is clear that admitting this evidence and allowing cross-examination regarding it is proper.

## CONCLUSION

Delta believes that the evidence presented in this case will conclusively show that Plaintiff was exempt from the overtime compensation requirements of the FLSA and the AMWA and his claims should be dismissed.

Respectfully submitted,

**THOMPSON COBURN LLP**

By /s/ Charles M. Poplstein (Pro Hac Vice)
   Matthew Braunel, Ark. Bar No. 50711
   Charles M. Poplstein (pro hac vice)
   One US Bank Plaza
   Suite 2700
   St. Louis, Missouri 63101-1611
   Telephone: 314.552.6000
   Facsimile: 314.552.7000
   mbraunel@thompsoncoburn.com
   cpoplstein@thompsoncoburn.com

*Attorneys for Defendant Delta Asphalt of Arkansas, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2024, a true and correct copy of the foregoing was served on counsel of record for Plaintiff Gaylon Murray, Josh Sanford (josh@sanfordlawfirm.com) and Sean Short (sean@sanfordlawfirm.com) through the Court's electronic filing system.

/s/ Charles M. Poplstein