**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **GAYLON MURRAY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 3:22-CV-00151-BSM** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DELTA ASPHALT OF ARKANSAS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Comes Now Defendant Delta Asphalt of Arkansas, Inc. ("Defendant" or "Delta"), by and through the undersigned counsel, and in accordance with the Court's Final Scheduling Order submits the following Proposed Findings Of Fact And Conclusions Of Law:

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **GAYLON MURRAY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 3:22-CV-00151-BSM** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DELTA ASPHALT OF ARKANSAS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This matter is before the Court for a bench trial on Plaintiff's claims for violation of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. §201, *et seq.*) ("FLSA"), and violation of the Minimum Wage Act of the State of Arkansas (Ark.Code Ann. §11-4-201 *et seq.*)("AMWA") for alleged failure to pay overtime compensation.

The Court has heard and considered the documentary and testimonial evidence presented by the parties, the stipulations of the parties, the arguments of counsel, and the record as a whole, and evaluated the credibility of the witnesses in light of the other evidence, and pursuant to Rule 52 of the Federal Rules of Evidence hereby makes the following findings of fact and conclusions of law. The factual findings include an assessment of the credibility of the testimony and evidence presented.

**Findings of Fact**

1.     Plaintiff is a citizen of the United States and a resident of the State of Arkansas and a former employee of Delta Asphalt of Arkansas, Inc. ("Delta").

2.     Delta is a corporation duly organized and existing, and in good standing, under the laws of the State of Arkansas and regularly conducts business in this State.

3.     Delta at all times relevant to this case was engaged in the business of road construction and related services, including providing services and materials to construct, repair and/or overlay asphalt on highways in the State of Arkansas pursuant to bid government contracts.

4.     During the years 2019-2022 Delta employed far more than five full-time employees, was engaged in interstate commerce, and purchased goods in interstate commerce exceeding $500,000 per year. Plaintiff was employed as a Construction Foreman for Delta during that time period and regularly handled goods that were moved in or produced for use in interstate commerce.

5.     During the time period Delta employed Plaintiff between June 1, 2019 and June 15, 2022 (the "Time Period"), Delta utilized separate and distinct road construction crews to perform the road construction and repair work. The size of the crews would vary from time to time from 3 -13 or more employees depending on the nature the jobs and the work to be performed, whether work was available due to weather or the initial ramp up for the construction season, and whether crews would be combined or enlarged due to the size of a particular job.

6.    The typical crew consisted of (i) a Construction Foreman, (ii) equipment operators who operated the screed, pavement rollers, and the water truck, and (in multiple instances) leads, (iii) laborers to handle traffic control functions, (iv) laborers to level and spread asphalt or gravel, dig up areas in need of repair, and perform other manual labor. The crew consisted of regular full-time employees of Delta, and employees hired through a temporary staffing agency on a temp to hire basis after 90 days.

7.    Plaintiff was employed by Delta from 2001 until June 15, 2022, which was his last day of work. Plaintiff had previously worked for Delta in the 1980s and then left and returned after working as a paramedic.

8.    From 2004 until June 15, 2022, Plaintiff was employed as a Construction Foreman. In that position, Plaintiff was responsible for supervising and managing a road construction crew of between 3-13 or more employees that performed government contracts to construct, repair and/or overlay asphalt on highways in the State of Arkansas. During the relevant time period, Plaintiff reported to the Construction Manager, who initially was Brad Marotti, and subsequently was Brian Kelso.

9.    Plaintiff's last day of work for Delta was June 15, 2022.

10.    As Construction Foreman, Plaintiff, like the other Foremen, was the Manager on site for his crew and operated with no daily on-site supervision. His job description during the last three years of his employment specifically included the following duties and responsibilities:

- Supervises all phases of a paving operation such as maintenance of equipment, employees, and distribution of product.
- Responsible for implementing environmental, health and safety regulations and policies (local, state and government).
- Responsible for maintenance and repair of equipment.
- Must keep equipment serviced, lubricated, and in good working order, including good housekeeping.
- Responsible for planning, organizing and coordination of daily activities and work assignments for your team.
- Responsible for deliveries, productions, record keeping, creating and submitting reports using email and fax with Word and Excel.
- Must have an understanding of the dangers Involved In an Interstate operation.
- Must have a basic knowledge of abilities and limitations in all applications. Ability to recognize potential problems before breakdowns occur.

- Must have the ability to work safely and follow the policies and procedures of the company. Company.

11.   Plaintiff's primary and essential duty was responsibility for performing the job within contract specifications, and overseeing and managing the operation of the crew and the functions they performed, including the safety of the crew and the public.

12.   As a Construction Foreman, Plaintiff determined who performed what duties, how they performed their duties, when the operations started and finished for the day, how to allocate work within the crew, and how to perform the work within the specifications. He was responsible for training employees on how to perform their job duties, safety training, and directing the crew employees on site as to what tasks they should perform. His crew also regularly included a lead when it was a regular sized crew.

13.   Plaintiff determined when employees could leave for the day, and performed safety training for crew members. He approved vacation and time off requests, prepared 90-day performance evaluations for new hires, and regularly provided input on what temporary employees should be hired or called back, and what wages employees should be paid. Among the evidence presented was multiple instances where Plaintiff:

      a.   Recommended whether to hire temporary staffing employees or not hire an employee and those recommendations were regularly followed.

      b.   Recommended what wages employees should be paid and those recommendations were regularly followed.

      c.   Directed the work of employees on site, including reporting when his directions were not follow.

      d.   Complimented the work performance of specific crew members and those evaluations were respected

      e.   Approved vacation leave and time off requests

f.   Reviewed safety procedures and requirement for new hires and signed off on the forms

g.   Established a later start time

h.   Determined when to stop accepting additional loads of material for asphalt work so as to determine the optimum stopping point for the day.

i.   Worked with the other Construction Foremen to determine and agree on who would be assigned to which crews.

This happened in the years before, and continued during, the Time Period. Plaintiff also attended Leadership Training in 2022 to help make him a better supervisor.

14.   Plaintiff prepared a daily report for the work performed by his crew, and reviewed, submitted and approved time records for the crew, These duties were directly and specifically related to his exempt duties.

15.   Plaintiff's account of the duties he performed, and the amount of time he purportedly worked, are not credible or consistent with the documentary evidence presented, much less the credible testimony of Delta's witnesses. Plaintiff's prior criminal record, and response to discovery, further undermines his credibility.

16.   The daily report presents specific and convincing proof that Plaintiff's primary duty was managing, overseeing and supervising a road construction crew of 3 or more employees. The daily report is replete with instances where Plaintiff decided when to call the work due to weather, determined when to stop or start for the day, and identified what work was performed. This also demonstrates that during the times Plaintiff was working with a crew he was not just assigned manual / non-exempt work, but was still functioning and performing the duties of a Construction Foreman with a primary duty of overseeing, managing, and supervising a road construction crew. The size of the crew may have varied from time to time, but it was always two or more employees at a minimum.

17.   Likewise, Plaintiff's performance evaluations all support this conclusion. It is clear that Plaintiff was being evaluated, and his goals and objectives were set, based on core supervisory competencies and functions. This included:

Working Safety

Acting with Integrity

Demonstrating Initiative

Delivering High Quality Work

Driving Continuous Improvement

Adapting To Change

Supporting Organizational Goals

18. Plaintiff also listed performance goals in each of his reviews. Of particular note were the following goals:

In 2017, one of the performance goals listed was to:

"Train 2 employees to run the screed, and one other shuttle buggy Operator….The company is In need of leaders, future foremans and managers, people that can perform the work. This would be accomplished: "

by their performance it not needing daily detailed instructions

Their ability to perform paving task by their own devised method, not mine always."

Plaintiff's supervisor responded:

This rating is based off of multiple conversations we have had this year concerning your employees, specifically the ones you are currently training to run the screed.  It is my understanding that as of today, that although you have definitely made progress with Conlee, you do not feel comfortable letting them function on their own.  I agree this goal was very difficult given the complexity of several of the jobs and complexity of the position

combined with training but I do not feel like the goal is not achievable.  I want to challenge you to have confidence in the decisions you have made in the People and let them make mistakes and learn from them.  It should be your goal for them to start each day and run throughout the oversight, outside of complex situations.  If they prove they are not capable of doing this, you have to know when to pull the plug a direction.  I will back you 100%.  I will do everything I can to help you with this (interviewing, hiring and evaluating), but at the end your crew and the decision on who to train and how long to let them train before calling it a success or fail, is yours.  The strength is a direct reflection of its leadership.  This holds true for me and all levels of management,

Plaintiff commented in response:

In many situations they still need detailed instructions, however this year we did jobs with difficult grade raises, and was quite …[challenging to] someone new to this type of work.  Even some of the overlays were more difficult then usual, however in terms of preparation, car machine, and safety I felt they exceeded expectations.  Screed operation is a difficult job to learn and takes many days … [to] learn this job and become completely comfortable performing the job.  Plans are to continue the training and place more and more on them, and let them devise their own personal methods.

In 2018 one of Plaintiff's performance goals was:

Organize starting times that use fewer man hours. Try to predict needed man hours against budgeted man hours and do my best to work within the budget. Setting start times for employees based on need and not convenience.

In 2021 Plaintiff's goals included:

"See that equipment checks and maintenance are better performed."

"More one on one interaction with each employee to discuss strengths and weaknesses, mine and theirs."

All of these goals and core competencies demonstrate Plaintiff was performing in an exempt function.

19.     To the extent Plaintiff elected to perform non-exempt work in addition to his other supervisory and related administrative duties, that was because Plaintiff elected in his discretion to perform those tasks. He specifically and repeatedly admitted that he decided himself to perform certain assignments, including operation of the screed, because he thought he could perform the work better than anyone else.

20.   The Court has reviewed and considered the evidence and the credibility of the witnesses and concludes that to the extent Plaintiff performed non-exempt work during the relevant time period this was a decision he made at his election in his own judgment and discretion and was not dictated by senior management. Therefore, the manual labor and equipment operation work Plaintiff performed did not impact his exempt status and fell within the scope of 29 C.F. R. §541.06, which provides in pertinent part:

**§ 541.106 Concurrent duties.**

(a) Concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of § 541.100 are otherwise met. Whether an employee meets the requirements of § 541.100 when the employee performs concurrent duties is determined on a case-by-case basis and based on the factors set forth in § 541.700. Generally, exempt executives make the decision regarding when to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing the nonexempt work. In contrast, the nonexempt employee generally is directed by a supervisor to perform the exempt work or performs the exempt work for defined time periods. An employee whose primary duty is ordinary production work or routine, recurrent or repetitive tasks cannot qualify for exemption as an executive.

(b) For example, an assistant manager in a retail establishment may perform work such as serving customers, cooking food, stocking shelves and cleaning the establishment, but performance of such nonexempt work does not preclude the exemption if the assistant manager's primary duty is management. An assistant manager can supervise employees and serve customers at the same time without losing the exemption. An exempt employee can also simultaneously direct the work of other employees and stock shelves.

21. Further, to the extent Plaintiff elected to operate equipment or perform manual work the Court finds this did not change the fact Plaintiff's primary duty was to oversee and manage the operation of the road construction crews entrusted to him.

22. The Court also finds relevant and convincing, per the regulations, the fact that plaintiff was paid significantly more in compensation for his work than the equipment operators and laborers who worked on his crew. Plaintiff was paid a salary of at least $48,000 plus benefits, whereas crew members were paid far less per hour for labor or equipment operation. During his final year of employment, effective March 1, 2022, Claimant received a merit increase and market adjustment to his salary culminating in a salary of $77,078. This reflects an hourly wage of approximately $37.00 per hour.

23. By way of comparison, the average hourly rate of pay for all Arkansas road crew laborers in May 2022, a date chosen to guarantee accuracy as most employees had returned from layoff by this date, was $17.80 per hour with the highest rate being $24.08 per hour and the average hourly rate for all Arkansas road crew operators was $21.10 per hour with the highest rate being $30.99 per hour earned by a lowboy driver, the highest compensated category of driver. The wage differential between Plaintiff and the next highest paid crew member doing similar nonexempt work, as well compared to the average compensation of the crew members performing similar nonexempt work demonstrates the premium that Delta was paying Plaintiff for his exempt duties/supervisory functions. And, under the DOL regulations, this wage differential further defeats Plaintiff's claim that he is non exempt because of the non-exempt work he allegedly performed. 29 C.F.R. § 541.700.

24. Plaintiff, like all other Construction Foremen, was paid on a salaried basis. He was paid in excess of $48,000 at all times relevant to the claims asserted. No deductions were made from his salary during at least the last three years of Plaintiff's employment, as well as during times prior to that time period.

25. Significantly, Plaintiff was paid throughout the year regardless of whether there was any work at all to be performed during any work week, including in the Winter and late Fall months when weather

would not permit laying asphalt. During the times when the crews were not working in Winter and late Fall Plaintiff would have only limited and occasional duties to perform. To the extent Plaintiff came in to work it was often because he asked for assignments during the slow months. He had four weeks of paid vacation each year as well.

26.   Delta determined that Plaintiff was an exempt employee for purposes of the relevant FLSA statutory provisions and regulations based on a good faith and reasonable review of the duties and responsibilities of a Construction Foreman under the relevant FLSA statutory provisions and regulations. Delta Human Resources personnel specifically reviewed the relevant FLSA regulations and fact sheets to identify the requirements, researched their applicability to the Construction Foreman position, and made a reasonable and good faith determination that Construction Foreman was an exempt position.

27.   Even if Plaintiff were not exempt from the overtime compensation requirements of the FLSA or the AMWA, which is not the case, Delta compensated Construction Foremen after considering the applicable exemption and did not knowingly or willfully disregard the application of the FLSA or the AMWA, or act with reckless disregard of the requirements of either statute with respect to the compensation of Construction Foremen, including Plaintiff.

28.   During the 17+ years he was employed by Delta and paid a salary Plaintiff never claimed to the Department of Labor, the State of Arkansas, or Delta Human Resources of management, that he was owed overtime compensation. Yet he filed this suit approximately a week after his last day of work (June 15, 2022).

29.   According to Plaintiff's daily diary reports, he only worked four or more shifts per week in 66 out of 146 work weeks during the last three years of his employment and worked less than two shifts per week in 36 of his last 38 weeks of employment. This seriously undermines Plaintiff's alleged calculation of overtime compensation.

30.  Plaintiff filed this lawsuit on June 22, 2022. Therefore, the relevant time period for limitations purposes commenced to run on that date.

### Conclusions Of Law

1.   The Court has jurisdiction of the FLSA claims under 28 U.S.C. §1331 and supplemental jurisdiction over the AMWA claim under 28 U.S.C. §1367(a). There is no objection to jurisdiction. Venue is proper in this Court.

2.   Delta was an employer within the meaning of the FLSA and the AMWA with respect to Plaintiff during the time period Delta employed Plaintiff between June 1, 2019 and June 15, 2022 (the "Time Period").

3.   The FLSA exempts from any requirement to pay overtime compensation any individual employed in a bona fide executive or administrative capacity. 29 U.S.C. 213(b)(1). Qualifications for those exemptions are further spelled out in Department of Labor Regulations. 29 C.F.R. 100(a)and 29 C.F.R. 200(a) respectively. Those regulations further establish a combination exemption. 29 C.F.R. § 541.600(a).

4.   Under the regulations, an individual is exempt if he or she is paid on a salaried basis, as defined by the regulations, and is employed in an executive capacity. The minimum salary required for exempt status during the Time Period was never more than $35,568. 29 C.F.R. § 541.602; *Coates v. Dassault Falcon Jet Corp.*, 961 F.3d 1039, 1042 (8th Cir. 2020).

5.   Under 29 C.F.R. 100(a), the executive exemption applies where an employee meets the following test:

  **a.** Compensated on a salary basis at a rate of not less than $684 per week ...;

  **b.** Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

  **c.** Who customarily and regularly directs the work of two or more other employees; and

    **d.**    Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

**6.**  The United States Supreme Court has made it clear that these exemptions are not to be strictly construed but should be given a "fair reading." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 200 L. Ed. 2d 433 (2018).

**7.**  Plaintiff in his capacity as Construction Foreman met the requirements of the above-detailed test.

**8.**  The AMWA generally tracks the FLSA in relevant part to this claim. Like the FLSA, the AMWA exempts from the overtime compensation requirements individuals employed in a bona fide executive or administrative capacity and adopts the FLSA regulations for determining applicability of that exemption. Ark. Code Ann. § 11-4-203. The AMWA further provides that decisions interpreting the FLSA may be looked to for guidance in interpreting the AMWA. See 010.14 Ark. Code R. § 106(B)(1)(a).

**9.**  Unlike the FLSA, the AMWA contains a two-year statute of limitations and only imposes liquidated damages in the case of a willful violation. Ark. Code. Ann § 11-4-218(g); Ark. Code. Ann § 11-4-218(a)(2).

**10.**  Plaintiff was paid on a salaried basis within the meaning of the FLSA and accompanying regulations, and the AMWA. The minimum salary to qualify for exempt status during the Time Period was never more than $35,568. During the Time Period Plaintiff never was paid less than $48,000 and therefore satisfied the first requirement for the executive exemption.

**11.**  Plaintiff also satisfied the second requirement for the executive exemption. As a Construction Foreman Plaintiff's primary duty was to supervise, manage and oversee a distinct and defined road construction crew of between 3-13 employees or more. The size of the construction crew varied from time to

time depending on the amount and type of work available and the particular projects, but always involved

supervision of more than two employees. The regulations (29 C.F. R. 541.102 define "management" as:

> Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

Plaintiff clearly performed such duties.

**12.**  Plaintiff's primary duty also clearly falls within the regulations:

> (a) To qualify for exemption under this part, an employee's "primary duty" must be the performance of exempt work. The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.
> (b) The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion. 29 C.F.R. §540.701.

**13.**  Further, to the extent Plaintiff claims that he was performing manual labor, the evidence is clear

that this was done at Plaintiff's election in his discretion as the on site Construction Foreman and does not

alter his exempt status. As noted above, 29 C.F. R. §541.06 addresses this in pertinent part:

> (a) Concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of § 541.100 are otherwise met. Whether an employee meets the requirements of § 541.100 when the employee performs concurrent duties is determined on a case-by-case basis and based on the factors set forth in § 541.700. Generally, exempt executives make the decision regarding when to perform nonexempt duties and remain responsible for the success or failure

of business operations under their management while performing the nonexempt work. In contrast, the nonexempt employee generally is directed by a supervisor to perform the exempt work or performs the exempt work for defined time periods. An employee whose primary duty is ordinary production work or routine, recurrent or repetitive tasks cannot qualify for exemption as an executive.

(b) For example, an assistant manager in a retail establishment may perform work such as serving customers, cooking food, stocking shelves and cleaning the establishment, but performance of such nonexempt work does not preclude the exemption if the assistant manager's primary duty is management. An assistant manager can supervise employees and serve customers at the same time without losing the exemption. An exempt employee can also simultaneously direct the work of other employees and stock shelves.

**14.** Further, If it is determined that Plaintiff does not meet the primary duty test under the executive exemption alone, "[t]he regulations allow combining the exempt work from one section to the exempt work of another section. 29 C.F.R. § 541.600(a). Thus, an employee whose primary duty is neither management nor administration may fall under a combination exemption based upon his administrative and management responsibilities." Auer v. Robbins, 65 F.3d 702, 722 (8th Cir. 1995), aff'd, 519 U.S. 452, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997); see 29 C.F.R. § 541.708.

**15.** The wage and hour requirements of the FLSA also do not apply to "any employee in a bona fide ... administrative ... capacity." 29 U.S.C. § 213(a)(1). United States Department of Labor ("DOL") regulations define an administrative employee as someone:

(a) Compensated on a salary or fee basis at a rate of not less than $684 per week ..., exclusive of board, lodging or other facilities;

(b) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(c) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

16.   The FLSA contains a two-tiered statute of limitations. "An action ... to enforce any cause of action for ... unpaid overtime compensation ... may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).

17.   Under the FLSA, a willful violation has been found where an employer "ignored specific warnings that they were out of compliance, destroyed or withheld records to block investigations into their employment practices, or split employees' hours between two companies' books to conceal their overtime work." *Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 617, (E.D. Va. 2014).

18.   For purposes of the FLSA, liquidated damages are awarded unless the employer can show that it acted in good faith and had reasonable grounds for believing that it was complying with the FLSA. 29 U.S.C.A. § 260; *Longlois v. Stratasys, Inc.*, 88 F. Supp. 3d 1058, 1081 (D. Minn. 2015).  In that case, liquidated damages equal to the amount of overtime owed are not mandatory. Instead, if an employer demonstrates good faith and reasonable grounds, the Court has discretion to determine whether, and to what extent, any amount of liquidated damages may be awarded, and in that case can award no liquidated damages, or some portion of liquidated damages less than the amount of overtime owed. *Id.*

19.   Even if it were ultimately determined that Plaintiff was not exempt, which is not the case, the Court finds that there was not a willful violation of the FLSA or the AMWA. A willful violation under the FLSA requires a finding that that "employer either knew or showed reckless disregard as to whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988).

20.  There is no evidence whatsoever that Delta knew its actions were in violation of the FLSA or AMWA, disregarded the relevant law and regulations, or acted in reckless disregard of whether the FLSA

applied. To the contrary, Delta carefully reviewed and considered whether the position was exempt under the FLSA and made a good faith and reasonable determination that the position was exempt.

**21.** For these same reasons the Court finds that even if it were ultimately determined that Plaintiff was not exempt, which is not the case, Delta acted in good faith and had a reasonable basis for determining that Plaintiff was exempted from the overtime compensation requirements of the FLSA and AMWA and therefore no liquidated damages should be awarded. Delta carefully reviewed the applicable regulation and the job duties for the position and made the good faith determination that Construction Foremen like Plaintiff were exempt.

**22.** In cases where a non-exempt employee was paid a set salary for a workweek the U.S. Supreme Court has held, and the Wage and Hour Division has made clear, that the only overtime owed is ½ the person's regular rate for hours worked in excess of 40 in a work week. *Overnight Motor Transp. Co., Inc. v. Missel*, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942) *superseded on other grounds by statute. See also* 29 C.F.R. § 778.114; *Wage and Hour Division Field Operations Handbook*, Ch. 32(b)(4)(b).

**23.** On a claim for unpaid overtime compensation, misclassifying an employee as exempt does not by itself give rise to an employer's liability; rather, the employer will be liable for damages only if the employee worked overtime hours for which the employer, owing to that misclassification, failed to pay him an overtime premium. *Longlois v. Stratasys, Inc.*, 88 F. Supp. 3d 1058, 1071 (D. Minn. 2015).

**24.** Even if it were ultimately determined that Plaintiff was not exempt, which is not the case, the Court finds that Plaintiff's calculations of claimed overtime are neither reasonable nor consistent with the records and facts. Plaintiff's explanations are not credible or reasonable.

**25.** Even if it is determined that Plaintiff was misclassified as exempt and is owed overtime pay, his damages will be limited to ½ of his regular rate for any hours that the Court determines were worked over 40 hours per week.

**26.** Therefore, judgment is entered in favor of Delta and against Plaintiff on his FLSA and AMWA

claims and those claims are dismissed with prejudice at Plaintiff's costs.


Dated: _____                    _____
                                          United States District Court Judge




                                          Respectfully submitted,

                                          **THOMPSON COBURN LLP**


                                          By _/s/  Charles M. Poplstein (Pro Hac Vice)_____
                                              Matthew Braunel, Ark. Bar No. 50711
                                              Charles M. Poplstein (pro hac vice)
                                              One US Bank Plaza
                                              Suite 2700
                                              St. Louis, Missouri 63101-1611
                                              Telephone: 314.552.6000
                                              Facsimile: 314.552.7000
                                              mbraunel@thompsoncoburn.com
                                              cpoplstein@thompsoncoburn.com

                                          *Attorneys for Defendant Delta Asphalt of
                                          Arkansas, Inc.*



                          <u>**CERTIFICATE OF SERVICE**</u>

        I hereby certify that a true and correct copy of the foregoing was served via email on January 16,
2024, to counsel of record for Plaintiff Gaylon Murray, Josh Sanford (josh@sanfordlawfirm.com) and Sean
Short (sean@sanfordlawfirm.com).


                                          */s/ Charles M. Poplstein_____*