UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

GAYLON MURRAY,                              )
                                            )
        Plaintiff,                          )        Case No. 3:22-CV-00151-BSM
                                            )
v.                                          )
                                            )
DELTA ASPHALT OF ARKANSAS, INC.,            )
                                            )
        Defendant.                          )

RESPONSE TO PLAINTIFF'S TRIAL BRIEF

INTRODUCTION

Plaintiff's Trial Brief Is largely dependent on his interpretation and assertions of facts which necessarily must be determined at trial. However, his Trial Brief does not effectively address the issues and arguments raised in the Trial Brief and Proposed Findings Of Fact And Conclusions Of Law of Delta Asphalt of Arkansas, Inc. ("Delta"). And, contrary to Plaintiff's assertions, Plaintiff's principal factual assertions will not be supported by the testimony and other evidence produced at trial. As explained in Delta's Trial Brief and Proposed Findings Of Fact And Conclusions Of Law, the evidence will demonstrate that Plaintiff's primary duty was executive and managerial in nature, that he exercised executive and managerial duties, and he did manage a customarily recognized department, subdivision or unit, within the meaning of the applicable laws and regulations. Further, Plaintiff exercised independent judgment and discretion in performing his duties, with recommendations as to hiring, firing, advancement, and compensation were particular and effective.

Further, Plaintiff's claim as to the hours he worked, to the extent even relevant because Plaintiff was exempt, are embellished and not supported by the relevant records, including Plaintiff's own diary. Delta properly classified Plaintiff as exempt from the overtime requirements of the FLSA. No finding of a willful violation of the FLSA or AMWA can be proven, and the evidence will show Delta acted in good faith and had

reasonable grounds for believing its interpretation of the FLSA and AMWA was correct.

## FACTUAL BACKGROUND

Delta disagrees with Plaintiff's characterizations of the relevant facts, and refers the Court to Delta's Trial Brief and Proposed Findings Of Fact And Conclusions Of Law for its position on those facts rather than detail every disagreement here. These factual disputes will be matters best determined by the Court based on the testimony and evidence presented at trial.

However, Delta will note that Plaintiff when Plaintiff was hired in 2001 this was the second time he had worked for Delta. He did not become a Construction Foreman until approximately 2004, and was paid on a salaried basis thereafter. There appear to be no dispute here that Plaintiff was paid on a salaried basis within the meaning of the FLSA and the AMWA. He was. He even was paid a salary during times when no road construction work was ongoing (due to weather or temperature) and/or the road construction crews were laid off.

As a Construction Foreman, Plaintiff was responsible for, and his primary duty was, overseeing, directing, and managing a road construction crew and their performance of the road construction project(s) assigned to the crew safely and in accordance with contract specifications and production standards. To the extent Plaintiff performed any duties typically performed by one of his crew, these were tasks he elected in his discretion to perform, apparently because he liked to do them, or thought no one else could perform them as well as he. That was his decision and his decision alone. His claim discounts all the supervisory and management duties he actually performed no matter what other tasks he may have elected to undertake in his own volition and election. Defendant properly classified him as exempt and paid him on a salary basis accordingly.

## ARGUMENT

### A. Plaintiff Qualifies As Exempt Under The FLSA And The AMWA.

While Plaintiff's Trial Brief details the requirements of the executive exemption, Plaintiff selectively

quotes from the FLSA regulations and fails to discuss many of the provisions in the regulations that are applicable. These are outlined below.

Plaintiff claims he failed to meet the second requirement of the executive exemption because (1) Plaintiff "was not engaged in the 'management of the enterprise . . . or of a customarily recognized department or subdivision thereof; and (2) even if Plaintiff engaged in some level of management as required by the rule, such management certainly did not constitute Plaintiff's 'primary duty.'"

However, Plaintiff managed a customarily recognized department or subdivision of Delta's enterprise. Applicable case law is clear that a crew of manual laborers may qualify as a subdivision of a company's enterprise for purposes of establishing the executive exemption even if they are not permanent and the personnel on the crew and the location of the work varies between projects. *See* 29 C.F.R. § 541.103(d) ("[c]ontinuity of the same subordinate personnel is not essential to the existence of a recognized unit with a continuing function."). *See also Allen v. Coil Tubing Servs. LLC*, 846 F. Supp. 2d 678, 708 (S.D. Tex. 2012) ("[a] recognized department or *subdivision* may move from place to place and the subordinate personnel may change, as long as the 'unit' has a continuing function."); *Carranza v. Red River Oilfield Servs., LLC*, No. CV H-15-3631, 2017 WL 387196, at *3 (S.D. Tex. Jan. 27, 2017); *Smith v. Frac Tech Servs., LLC*, No. 4:09CV00679 JLH, 2011 WL 96868 (E.D. Ark. Jan. 11, 2011); *Sutton v. Engineered Sys., Inc.*, 598 F.2d 1134 (8th Cir. 1979). Plaintiff was assigned to independently manage, direct and oversee one of several separate and distinct road construction crews, each of worked separately and under circumstances where the Construction Foreman was the senior managerial employee at the site. This is no different than managing a shift or a department, or being an assistant manager of a store on a separate shift. Here, it is clear that Delta will establish that Plaintiff's construction crew during the relevant time period was a customarily recognized subdivision of Delta's enterprise.

Next, Plaintiff argues that his primary duty was not the management of his crew. The DOL's regulations identify a non-exhaustive list of activities that constitute "management" including: training of

employees; setting and adjusting their ... hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures. 29 C.F.R. § 541.102. Delta's evidence will show that Plaintiff's responsibilities entailed a significant number of these management-related duties.

Under 29 C.F.R. 541.700(b) (emphasis added): "[t]he amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, **and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work.** Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." *See also Villegas v. Dependable Const. Servs., Inc.*, No. CIV. 4:07-CV-2165, 2008 WL 5137321 (S.D. Tex. Dec. 8, 2008). (quoting *Spinden v. GS Roofing Products Co., Inc.,* 94 F.3d 421, 427 (8th Cir.1996), stating "[t]he fact that an employee spends 65 to 90 percent of his time on nonexempt tasks 'is not a controlling factor under the regulations' for determining whether the employee was exempt from the FLSA's overtime."); *Buntin v. Schlumberger Tech. Corp.*, No. 3:16-CV-00073-TMB, 2018 WL 6220059, at *5 (D. Alaska Aug. 6, 2018), on reconsideration, No. 3:16-CV-00073-TMB, 2021 WL 4448922 (D. Alaska Sept. 28, 2021). Here, it is clear that over 50 percent of Plaintiff's job duties were managerial, but even to the extent the percentage was lower than 50 percent, this

is not determinative where, as here, his primary duty was executive and a significant amount of Plaintiff's job functions were managerial.

Further, exempt work for an executive employee includes activities directly and closely related to management functions. 29 C.F.R. § 541.702. Under the regulations, "directly and closely related" means tasks that are related to exempt duties and that contribute to or facilitate performance of exempt work and specifically include recordkeeping such as keeping time and production records for subordinates, distributing materials or supplies, and checking the work of subordinates to determine whether they are performing their duties properly. 29 C.F.R. § 541.703.

Significantly, the regulations also provide that exempt executive employees *may make the decision to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing nonexempt work.* 29 C.F.R. § 541.106 (emphasis added).

Finally, per the regulations, the fact that plaintiff was paid significantly more in compensation for his work than the equipment operators and laborers who worked on his crew is also relevant. 29 C.F.R. § 541.700(a), another factor Plaintiff overlooks.  At the time of Plaintiff's resignation, the evidence is expected to show Plaintiff was being paid a salary at a rate of $77,078. This equates to an hourly wage of approximately $37.05 per hour. By way of comparison, the evidence is expected to show that the average hourly rate of pay for all Arkansas road crew laborers in May 2022, a date chosen to guarantee accuracy as most employees had returned from layoff by this date, was $17.80 per hour with the highest rate being $24.08 per hour and the average hourly rate for all Arkansas road crew operators was $21.10 per hour; with the highest rate being $30.99 per hour earned by a lowboy driver, the highest compensated category of driver that performed non-exempt functions. Thus, the wage differential between Plaintiff and the next highest paid crew member doing similar nonexempt work, as well as compared to the average compensation of laborers and operators performing similar nonexempt work demonstrates the premium that Delta was paying Plaintiff for his exempt duties/supervisory functions.

**B. The Evidence Will Show That Particular And Effective Weight Was Given To Plaintiff's Recommendations As To Hiring, Retention, Advancement, And Compensation.**

Plaintiff next argues that his recommendations as to hiring, firing, advancement, and promotion, or any other change of status of other employees were not given particular weight. Under the Department of Labor regulations, "[a]n employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." 29 C.F.R. § 541.105. According to the Eight Circuit Court of Appeals: "it is apparent that many different employee duties and levels of involvement can work to satisfy this fourth element." *Madden v. Lumber One Home Ctr., Inc.*, 745 F.3d 899 (8th Cir. 2014). Quoting *Madden*, the Eighth Circuit Court of Appeals has further ruled that showing an executive's input into personnel decisions were given particular weight can be established by proving "that the purported executives' input had more influence than hourly employee'[s] input." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 885 (8th Cir. 2016).

Delta will be producing a significant number of emails and other testimony directly countering this point and establishing that Plaintiff was regularly requested to provide such recommendations and that these recommendations were given particular weight by Delta. Plaintiff's recommendations in providing raises and pay cuts, initial 90-day evaluations, promoting temporary employees to regular employees, and hiring and rehiring were all given particular weight. It is clear that Delta will be able to establish that Plaintiff's input had more influence on these and other managerial decisions than an hourly employee's input.

**C. Plaintiff Exercised Independent Judgment And Discretion In The Performance Of His Job Duties For Purposes Of The Applicable Exemptions.**

Plaintiff next argues that he did not exercise independent judgment and discretion in the performance of his job duties for purposes of establishing the administrative exemption of the FLSA. In making this argument, Plaintiff misses the second point about the exemption argument. To the extent the court

determines that the scope of Plaintiff's duties were not sufficient to establish the executive or administrative exemptions alone, Plaintiff's job functions also included a significant number of administrative duties such to allow the court, in consideration of both Plaintiff's executive and administrative functions, to find that Plaintiff satisfies a combination exemption. *Auer v. Robbins*, 65 F.3d 702, 722 (8th Cir. 1995), aff'd, 519 U.S. 452, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997) ("[t]he regulations allow combining the exempt work from one section to the exempt work of another section. 29 C.F.R. § 541.600(a). an employee whose primary duty is neither management nor administration may fall under a combination exemption based upon his administrative and management responsibilities."); *see* 29 C.F.R. § 541.708.

Here, due to the significant executive and administrative duties that Plaintiff performed, Delta can prove that Plaintiff more than satisfied the requirements of either the executive or the administrative exemption standing alone, but if the Court deems that Delta fails to establish both, could undoubtedly combine the requirements to establish a combination exemption. This is because Delta will be able to show that Plaintiff's primary duty involved the performance of non-manual work directly related to the management or general business operations of Delta and included the exercise of independent judgment with respect to matters of significance.  Indeed, the evidence showed that Plaintiff exercised independent judgment and discretion in managing and directing the road construction crew, and in performing other non-manual job duties.

Contrary to Plaintiff's assertions, it is clear that Plaintiff's primary duties included the exercise of discretion and independent judgment with respect to matters of significance. Whether Plaintiff's duties included independent judgment and discretion is a question of fact for the Court and "does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review." *Stofer v. James Greene & Assocs., Inc.*, No. 4:20-CV-00027-KGB, 2021 WL 1148708, at *10 (E.D. Ark. Mar. 25, 2021) (quoting 29 C.F.R. § 541.202). The Eighth Circuit Court of Appeals has stated that implementing operating practices, carrying out major assignments, and participating in planning business

objectives all involve a substantial amount of discretion and are "certainly matters of significance." *Grage v. N. States Power Co.-Minnesota*, 813 F.3d 1051 (8th Cir. 2015).

In Plaintiff's deposition, he admitted to making determinations related to when his crew would begin and end work, providing training and oversight, initial assessments of how best to perform proposed jobs, day-to-day determinations of when materials should stop being transported to the job site, and which employees on his crew should be engaged in performing which job functions. He also admitted to monitoring the construction work being performed by subcontractors and collecting and verifying time worked by his crew. The evidence will show, among other things, that Plaintiff approved vacation, directed the work and assignments of the construction crew, provided safety training and verified it was provided, and performed 90-day performance evaluations.   Although Delta believes Plaintiff was exempt under the executive exemption, Plaintiff's job functions establish both the executive and administrative exemptions on their own, and included a significant amount of executive and administrative functions such to prove a combination exemption.

**D. Plaintiff's Assertions Regarding Hours Worked Will Not Be Supported By The Evidence.**

Plaintiff next asserts that he "was not paid all overtime due for all work performed over forty hours per week," and that Delta had "actual or constructive knowledge that he was performing the work."

Plaintiff correctly states that "[a]n employee who sues for unpaid overtime 'has the burden of proving that he performed work for which he was not properly compensated.'" *Thompson v. Shock*, No. 4:13-CV-735-KGB, 2015 WL 13310487, at *12 (E.D. Ark. June 24, 2015) (quoting *Holaway v. Stratsys, Inc.*, 771 F.3d 1057, 1059 (8th Cir. 2014)). Plaintiff then quotes *Dole v. Tony and Susan Alamo Found.,* 915 F.2d 349, 351 (8th Cir. 1990) and asserts that only a just and reasonable inference need be established by the Plaintiff as to the uncompensated work performed before the burden shifts to the employer to negate the reasonableness of the inference. However, even under this case, Plaintiff will be unable to establish a just and reasonable inference in relation to his assertion in his Proposed Findings of Fact and Conclusions of Law that he worked

71.5 hours per week from March through November in each relevant year. *See Thompson*, 2015 WL 13310487 ("[a]lthough [Plaintiff] is subject only to this relaxed standard, he must still provide some 'details which would allow a jury to determine that he worked beyond 40 hours in any specific week of his employment.'").

To the extent that Plaintiff is able to meet his burden in establishing a just and reasonable inference that he performed uncompensated work, Delta will be able to negate the reasonableness of his contentions for a significant proportion of work weeks through the inferences that can be drawn from an in depth comparison of Plaintiff's own diary reports detailing his, and his crews', daily activities, and the amount of hours Plaintiff reported for his hourly crew members each shift. This comparison will demonstrate that Plaintiff's claims as to the number of weeks and hours worked does not comport with the records and his credibility should be questioned.

It is also worth noting that the vast majority of the cases and sources that Plaintiff cites in attempting to make his arguments are factually distinguishable to the facts in the instant case. Plaintiff cited a significant number of opinions regarding nonexempt employees and recordkeeping where misclassification was not an issue. The regulations cited appear to solely apply to nonexempt employees.[1] For example, (1) Plaintiff quotes *Recordkeeping Requirements Under the Fair Labor*, Wage and Hour Division Fact Sheet No. 021 in saying that employers "can use 'any timekeeping method they choose' as long as the method is 'complete and accurate,'" but fails to recognize that the fact sheet makes clear that employers must "keep certain records *for each non-exempt worker*." (emphasis added), (2) Plaintiff cites 29 C.F.R. § 516.1 but fails to

---

[1] These include *Goldberg v. Cockrell*, 303 F.2d 811 (5th Cir. 1962), *Mitchell v. Reynolds*, 125 F. Supp. 337 (W.D. Ark. 1954), *Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011), *Hertz v. Woodbury Cnty., Iowa*, 566 F.3d 775 (8th Cir. 2009), *Allen v. City of Chicago*, 865 F.3d 936 (7th Cir. 2017), *Garcia v. Draw Enterprises III, LLC*, No. 17 C 4477, 2018 WL 6045206 (N.D. Ill. Nov. 19, 2018), *Arnett v. Sears, Roebuck & Co.*, No. CIV.A. SA-12-CA-488-, 2013 WL 3324070 (W.D. Tex. July 1, 2013), *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946), *Dole v. Tony & Susan Alamo Found.*, 915 F.2d 349 (8th Cir. 1990), *Moran v. Al Basit LLC*, 788 F.3d 201 (6th Cir. 2015), *Mumbower v. Callicott*, 526 F.2d 1183 (8th Cir. 1975), *Alston v. DIRECTV, Inc.*, 254 F. Supp. 3d 765 (D.S.C. 2017), and *Arasimowicz v. All Panel Sys., LLC*, 948 F. Supp. 211 (D. Conn. 2013). Further, *Meadows v. NCR Corp.*, No. 16 CV 6221, 2021 WL 5299778 (N.D. Ill. Nov. 15, 2021) was vacated and remanded on the basis of what qualifies as compensable time.

include that this statute applies explicitly to employees "other than executive, administrative, etc., employees", and (3) Plaintiff cites ARLSD § 010.14-102(A)(4), even though it also explicitly does not include exempt employees.

If necessary, the Court should make a determination with due consideration as to hours worked based on Plaintiff's diary reports and submitted timesheets for his crewmembers, as they are the only documentation that demonstrate the amount of hours that Plaintiff was likely actually working during the relevant time period. This is an appropriate proxy because Plaintiff himself alleged that his job functions during the time period at issue solely included laying asphalt alongside the crewmembers that he tracked time for, and stated in his deposition that he was the individual responsible for deciding when to begin and end work each day. Plaintiff has not alleged that on any occasion he sent his crewmembers home and continued laying asphalt by himself, so by examining the hours he reported his crew was working each day alongside the daily diary reports he wrote, the Court should be able to make a reasonable determination. Plaintiff's recollections as stated are clearly inaccurate and it would be unreasonable for the Court to assert that Delta was obligated to keep accurate and complete time-records for Plaintiff where Delta believed in good faith that Plaintiff was exempt such that any such records would not have been required to be maintained.

**E. The Evidence Wil Not Establish A Willful Violation for FLSA Purposes Nor Justify An Award Of Liquidated Damages.**

As detailed in Delta's Trial Brief, even if Plaintiff were misclassified, which is not the case, Delta will be able to establish that its classification of Plaintiff as exempt was, even if mistaken, done in good faith and not done in willful disregard of its statutory obligations under the FLSA or AMWA. As such, it would be improper for the Court to punish Delta with liquidated damages or to extend the statute of limitations to 3 years as allowed for "willful" violations of the FLSA. The FLSA ties the determination of which statute of

limitations period applies to a factual finding that the employer has committed a "willful violation" of the FLSA.[2]
*See Longlois v. Stratasys, Inc.*, 88 F. Supp. 3d 1058, 1080 (D. Minn. 2015); *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988). "Courts have found employers willfully violated FLSA where they ignored specific warnings that they were out of compliance, destroyed or withheld records to block investigations into their employment practices, or split employees' hours between two companies' books to conceal their overtime work." *Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 617, (E.D. Va. 2014)).

Here, Plaintiff has admitted in discovery that he did not provide notice to Delta, Human Resources or otherwise, of any complaints regarding overtime compensation or his status as an exempt employee prior to his separation and subsequent filing of the instant action. Further, the evidence is not expected to show that Delta received any warnings from the Department of Labor or otherwise regarding their compliance, that Delta destroyed records or concealed wage practices to deter investigation. Rather, the evidence is expected to show that Delta considered and reviewed the applicable FLSA regulations and reasonably believed at all times that its actions were compliant with applicable statutes and regulations.

In addition to unpaid overtime compensation, the FLSA provides that a successful claimant can recover liquidated damages "in an additional equal amount." 29 U.S.C. § 216(b). Liquidated damages in this context are not a punitive measure against the employer, but are rather considered to be compensation "for the delay in payment of wages owed" to the employee. *Chao v. Barbeque Ventures, LLC,* 547 F.3d 938, 941 (8th Cir. 2008) (internal quotation omitted). However, under the FLSA, where "the employer shows to the satisfaction of the court that the act or omission giving rise to [the employee's] action [for unpaid overtime compensation] was in good faith and that [the employer] had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated

---

[2] As noted in Delta's trial brief, the claim under the AMWA is limited to a two year statute of limitations.

damages or award any amount thereof not to exceed the amount specified in section 216 of this title." 29 U.S.C.A. § 260.

Delta will be able to prove good faith here. It evaluated the job duties and responsibilities of the Construction Foreman, and the duties and expectations of Plaintiff, and determined that Plaintiff was exempt from FLSA overtime requirements. This determination was reasonable because Delta determined Plaintiff's primary duty was overseeing and managing and directing road construction crews and that he was performing supervisory and administrative functions including but not limited to determining which of his crew members performed what duties, how they performed their duties, when daily operations started and finished, work allocations, and how to perform work within specifications, as well as being responsible for training, directing, safety of crew employees on site, and providing recommendations to be used for employment and benefit determinations.

## CONCLUSION

Plaintiff was a Construction Foreman responsible for overseeing, directing and managing a multi-member crew of personnel who was correctly deemed to be statutorily exempt from the overtime requirements of the FLSA and the AMWA. Plaintiff is not owed monetary damages, liquidated damages, prejudgment interest, or reasonable attorney's fees and costs because Delta had no obligation to provide overtime compensation. Finally, to the extent that the Court determines that overtime compensation is owed, which the evidence is not expected to show, liquidated damages and/or a three-year statute of limitations are not proper because Defendant can demonstrate that any found omissions were not done willfully, were in good faith, and Defendant had a reasonably basis for believing that Plaintiff was not due overtime compensation under the FLSA and AMWA.

Respectfully submitted,

**THOMPSON COBURN LLP**

By _/s/ Charles M. Poplstein (Pro Hac Vice)_
    Matthew Braunel, Ark. Bar No. 50711
    Charles M. Poplstein (pro hac vice)
    One US Bank Plaza
    Suite 2700
    St. Louis, Missouri 63101-1611
    Telephone: 314.552.6000
    Facsimile: 314.552.7000
    mbraunel@thompsoncoburn.com
    cpoplstein@thompsoncoburn.com

*Attorneys for Defendant Delta Asphalt of Arkansas, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2024, a true and correct copy of the foregoing was served on counsel of record for Plaintiff Gaylon Murray, Josh Sanford (josh@sanfordlawfirm.com) and Sean Short (sean@sanfordlawfirm.com) through the Court's electronic filing system.

_/s/ Charles M. Poplstein_