SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** (this "Agreement") is made and entered into between Delta Asphalt of Arkansas, Inc. (the "Company") and Gaylon Murray ("Murray") as of the date below when signed by Murray.

**WHEREAS:**

(1) Murray is a former employee of Delta who filed a lawsuit against the Company in the United States District Court for the Eastern District of Arkansas (the "Lawsuit") styled *Gaylon Murray v. Delta Asphalt of Arkansas, Inc.*, given a case number 3:22-cv-151-BSM (the "Lawsuit") and claiming violations of the Fair Labor Standards Act of 1938, as amended ("FLSA") and the Arkansas Minimum Wage Act (the "AMWA") arising out of Murray's employment with the Company.

(2) The Company Parties (defined below), have denied liability, and steadfastly maintained that Murray's claims for liability, overtime pay, liquidated damages, fees, costs, and damages are not valid or supportable;

(3) There is a genuine and bona fide dispute between the parties as to whether Murray is owed any overtime or other compensation from the Company Parties;

(4) The parties to this Agreement desire to forever resolve and compromise all of the claims asserted or which could have been asserted by Murray upon the terms set forth below; and

(5) Murray has been provided with a reasonable period of time and opportunity in which to consider the Agreement and to consult with Murray's attorneys concerning the settlement and this Agreement, and is entering into this Agreement voluntarily with full knowledge of its significance and effect.

NOW, THEREFORE, in consideration of the above recitals, and the promises, covenants and agreements contained herein, the parties agree as follows:

1. <u>Definitions</u>.  Whenever used herein, the term: "Company Parties" shall mean (1) the Company, Delta Asphalt, Inc., Delta Companies, Inc. Reeves Construction Company, COLAS Inc., and COLAS S.A. and their respective direct and indirect subsidiaries, parent companies, affiliated businesses and companies, plans,

employee benefit plans and trusts, (2) the respective present and former officers, directors, employees, owners, shareholders, attorneys, fiduciaries, members, managers, administrators, trustees, agents, partners, owners and shareholders of each entity described in Section 1(b)(1) above, and (2) the heirs, insurers, reinsurers, personal representatives, successors, and assigns of each person or entity described in Section 1(b)(1) or 1 (b)(2) above.

    2.   <u>Process of Settlement of Bona Fide Dispute</u>.

(a)  There is a genuine and bona fide dispute between Murray, and the Company whether Murray is owed any overtime compensation, additional wages or compensation, liquidated damages, penalties, interest, legal fees or costs by the Company or any third party as a result of services performed by Murray as a W-2 employee of the Company or arising out of Murray's employment with the Company and/or Murray's provision of services in connection with such employment, over and above the wages previously paid to Murray by the Company. The Company Parties strongly deny that Murray is owed anything else, or that any other person or entity owes Murray any monies, as a result of any such services or arising out of Murray's employment with the Company and/or Murray's provision of services in connection with such employment.  Murray agrees to resolve this bona fide dispute on the terms described in this Agreement.

(b)  This Agreement, and the Company's obligations hereunder, are conditioned upon approval of this settlement and dismissal of the Lawsuit by the Court in the Lawsuit, as provided for below, and receipt of all required Form W-9s and W-4s as required in this Agreement. Upon execution of this Agreement, the parties will cause their attorneys to prepare and file a Motion to Approve Settlement in a form attached hereto as Exhibit A.

(c)  If the settlement is not approved by the Court:  (1) this Agreement shall be null and void and neither party shall have any rights or obligations thereunder except as provided in Section 2(c)(2) of this paragraph, and (2) the parties shall be restored to the status quo in effect at the time of this Agreement was signed, and neither party may refer to or use this Agreement or any other settlement negotiations, in the Lawsuit, or any other proceeding involving Murray.

(d)  When this Agreement is approved by the Court, then this Agreement shall become effective without any further action being required, and the Company will make the payments specified in Section 3 (a) as and when called for by this Agreement.

(e)  It is the intention of the parties to provide for a full, legally-effective release of any and all claims identified in Section 4 below.  To this end, Murray and the Company will, and will cause their attorneys to, take such actions and execute and deliver such documents, and obtain such judicial or other approvals, as the Company may request to further effectively settle, waive and release all such claims being herein released in this Agreement, all at no other cost to the other party for any actions taken by them or their counsel.

3. **Settlement Payment**.

(a)  Within ten (10) days of satisfaction of the conditions set out in Section 2 above, the Company shall pay the gross amount of Five Thousand Dollars ($5,000.00), as follows, in full settlement and satisfaction of all claims released by Murray described below, provided that a fully executed W-4 first have first been provided by Murray for the W-2 payment, and a fully executed W-9 has first been provided by Counsel for Murray for the payment to such Counsel, as a condition to such payments:

i.  By a check payable to Murray in the amount of Two Thousand Dollars ($2,000.00), less applicable withholding for federal, state and local income taxes; attributable to the settlement of claims for minimum wage, overtime compensation, tips, monies, unjust enrichment, unlawful deductions, and other claims herein released;

ii.  By a check payable to Sanford Law Firm, PLLC in the amount of Three Thousand Dollars ($3,000.00)(conditioned upon receipt of a completed form W-9) as and for attorney's fees and costs.

Payment shall be made by mailing the checks to the offices of Murray's attorneys, Sanford Law Firm, PLLC, within such time period and deemed received by Murray when received by his counsel.  Except as provided for above, each party shall bear and pay for his / its own costs and attorney's fees.

(b)  These payments are in full settlement and satisfaction of any and all claims herein released, including but not limited to any and all claims against the Company Parties for overtime compensation,

minimum wage, liquidated damages, penalties, unpaid wages, unpaid tips, monies, unjust enrichment, unlawful deductions, attorney's fees and costs. These payments shall not constitute wages or compensation for purposes of any applicable employee benefit plan.

(c)     Murray agrees that the Company Parties have not made any representations regarding the taxability of any payments made pursuant to this Agreement. Murray agrees and warrants that Murray is solely responsible for, and shall timely pay, all taxes, if any, which have been due or which may become due to any governmental authority on account of any funds received directly or indirectly from the Company , pursuant to this Agreement. Murray further agrees to pay for and hold the Company Parties harmless, and to indemnify the Company Parties, from any claims, assessments, demands, penalties, and interest found to be owed as a result of any payment made pursuant to the sums described in Section 3 of this Agreement, specifically excepting required withholdings to be made by the Company from the W-2 payment, for which the Company will be responsible.

4.     <u>Release</u>.

(a)     Murray hereby releases, gives up, and waives any and all known and unknown claims, suits, lawsuits, and causes of action which Murray may now have or hold against any of the Company Parties in any way arising out of, resulting from or based upon: (i) any aspect of Murray's employment with any of the Company Parties or its termination, (ii) any custom, practice, policy, promise, agreement, conduct, act, failure to act, or decision of any of the Company Parties prior to this date, (iii) any facts or claims alleged or which could have been alleged in the Lawsuit, (iv) any claims under the FLSA, the AMWA, Illinois law, Missouri law, or any other federal state or local law (or for breach of an express or implied contract, detrimental reliance or other statutory or common law claim) concerning payment of wages, minimum wage, overtime compensation, liquidated damages, penalties, paid time off, retaliation, abuse of process, malicious prosecution, slander, defamation, interference with contractual relations, wrongful dismissal, or infliction of emotional distress, taxes, interest, benefits, expenses, compensation, or wage statements, or the defense or settlement of the Lawsuit, or the Lawsuit, (v) any claim for age discrimination under the Age Discrimination In Employment Act of 1967, as amended, or any claim for discrimination or retaliation under any other federal, state or local law, including but not limited to Title VII of the Civil rights Act of 1964, as amended, 42 U.S.C. §1981, or the Arkansas Civil Rights Act of 1993; or (v) any facts or events occurring prior to the date Murray signed this Agreement.  However, this is not a release of any claim for breach of this Agreement, or any rights or claims

arising after the date Murray signs and delivers this Agreement to the Company.  Murray further promises, covenants and agrees not to prosecute, pursue, or sue on any claims Murray has released above in this paragraph.

(b) The releases in this Section 4 include, but are not limited to, a release of all federal, state and local statutory, contract, equitable, tort, common law or other claims pertaining to such matters: (1) under the Fair Labor Standards Act of 1938, as amended, the AMWA, the Illinois Minimum Wage Act, the Illinois Wage Payment and Collection Act, the Missouri minimum wage act, or any other federal, state or local law, decision, ordinance, order, wage order, code, or regulation dealing with payment of wages, minimum wage, overtime, deductions, wage statements, or hours worked; (2) under the Employee Retirement Income Security Act relating to any such claims for unpaid wages or unpaid compensation, (provided, however, that Murray does not release any claims to any vested 401k benefits); or (3) under the Age Discrimination In Employment Act of 1967, as amended, under any other federal, state or local law for discrimination or retaliation, including but not limited to Title VII of the Civil rights Act of 1964, as amended, 42 U.S.C. §1981, or the Arkansas Civil Rights Act of 1993, (4) under any federal, state or local law, regulation, ordinance, executive order or decision, or common law right. Murray specifically agrees that Murray has not asserted any claim of (or been subjected to or been the victim of) age discrimination, retaliation, sexual violence or any type of unlawful sexual harassment; nor will Murray claim that Murray has otherwise been treated adversely, discriminated against (on account of his age or otherwise) or wrongfully or retaliated against in connection with Murray's employment or its termination. Murray acknowledges that the Company relied on the representations and promises in this Agreement in entering into this Agreement.

(c) Murray specifically admits and agrees that upon payment under this Agreement, Murray has been paid in full, and is not owed, any additional wages, compensation, overtime compensation, paid time off, benefits, liquidated damages, penalties, interest, or damages for any services performed by Murray in connection with his duties as a W-2 employee of the Company or arising out of or relating to Murray's employment with the Company or the provision of any services pursuant to such employment.

(d) Murray represents and warrants that Murray is the sole owner of all claims Murray has released in this Agreement and Murray has not assigned or transferred any such claim (or any interest in such claim) to any other person.  Murray will indemnify, defend and hold the Company Parties harmless for,

from and against any damages, costs or expenses which they may incur if these representations and warranties are incorrect in any respect.

(g)     Nothing in this Agreement shall prevent (1) Murray from filing an administrative charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), any state or local fair employment practices ("FEP") agency, or under the National Labor Relations Act (if applicable) or (2) Murray from reporting possible violations of federal or state law or regulation to any governmental agency or entity (or from participating in any governmental reward or bonus program for reporting possible violations of law). Murray agrees, however, that Murray shall not seek, accept, or be entitled to any monetary relief, whether for Murray individually or as a member of a class or group, arising from any such charge filed by Murray or on Murray's behalf as to claims herein released.

5.      **Attorneys**. Murray acknowledges and agrees Sanford Law Firm, PLLC and its attorneys are the sole attorneys representing Murray in connection with the Lawsuit, and that no other attorney, agent, or representative has any claim of any type against any of the Company Parties or the Customers in connection with the settlement contemplated by this Agreement. The payment to the Sanford Law Firm, PLLC described above satisfies all such claims by all such attorneys.

6.      **No Admissions, Limits On Admissibility, Protective Order**.  (a) Murray understands and agrees that the Company is entering into this Agreement and making all payments hereunder for the purpose of settlement and compromise only, to avoid the time, personnel resources and expenses associated with the defense of the same, and without any admission or concern by any of the Company Parties or the Customers as to fault, liability, wrongdoing, or the validity of any positions taken by Murray in the Lawsuit, all of which are expressly denied.  This Agreement is not an admission as to fault, liability or wrongdoing by any of the Company Parties, and should not be interpreted or construed as such.

(b) This Agreement, the compromise and settlement evidenced thereby, and any evidence relating thereto, each and all:  (i) shall never be admissible as evidence against the persons herein released in any present or future suit, claim or proceedings of any nature, except as necessary to enforce rights granted pursuant to this Agreement; (ii) may be asserted by and introduced as evidence for the Company Parties as an absolute and final defense and bar to any claim released herein in any present or future suit or proceeding of any nature. (d)    Murray shall return to counsel for the Company all documents produced in the Lawsuit, or certify in writing to the Company that all such documents have been destroyed. However, Murray's Counsel may retain any

documents produced in the Lawsuit, and all other documents of the Company Parties in their possession, solely for purposes of complying with applicable state bar association rules concerning retention of documents in litigation and legal malpractice carrier obligations in that regard, but Murray's Counsel may not retain or use the documents for any other purpose.  Except as required by law, Murray's Counsel and Murray will not provide any documents or statements produced in this case, or any depositions taken in this case, to any third person.

(c)  Any Protective Order entered in the Lawsuit shall continue in full force and effect, including after dismissal of the Lawsuit, and the parties shall continue to comply with the terms thereof.

7. **Representations.** Murray represents and agrees that: (a) Murray is voluntarily entering into this Agreement of Murray's own free will after having had a reasonable and adequate period of time and opportunity to consider this Agreement and consult with Murray's attorneys and advisors concerning this Agreement, and has consulted with Murray's attorneys concerning this Agreement and been advised by the Company in writing (and hereby so is advised) to consult an attorney before signing it, (b) Murray has carefully read this Agreement, fully understands what it means, and is receiving valuable consideration in exchange for execution of this Agreement that Murray would not otherwise be entitled to receive, consisting of the payments and agreements set out in this Agreement, (c) Murray has not asserted, and is not asserting, any claim for age discrimination under the Age Discrimination In Employment Act of 1967, as amended, or any other federal, state or local law or decision, and the time to file any such claim or charge of discrimination has expired, (d) Murray is voluntarily executing this Agreement as Murray's own free act and deed for the purposes of inducing the payments and agreements referred to in this Agreement. Murray further represents and warrants that, as of the date on which he executes the Agreement, he is not aware of any purported improper, unethical or illegal conduct or activities, if any, of any of the Company Parties other than the allegations made in this lawsuit, all of which are specifically denied by the Company Parties. In particular, Murray warrants and represents that he is neither aware nor has reason to believe that any of the Company Parties have taken or failed to take any action that would cause any of them to be in violation of any applicable federal, state, local or other law, other than the allegations made in this lawsuit, all of which are specifically denied by the Company Parties.

8. **Conditions.** This Agreement shall not be valid, enforceable or effective, and the Company shall not have any obligations hereunder, unless and until Murray signs and delivers this Agreement to the Company and the settlement receives approval by the Court in the Lawsuit.

9. **No Amendment; Miscellaneous.**  Neither this Agreement, nor any of its terms, may be changed, waived, or added to except in a writing signed by all parties.  This Agreement may be executed electronically and in one or more counterparts, each of which is an original and all of which together constitute one and the same instrument. A PDF or facsimile is as good as an original. No term or provision of this Agreement shall be construed against the drafter, but instead shall be deemed to have been jointly drafted by the parties.  If any provision in this Agreement is found to be unenforceable, all other provisions will remain fully enforceable and any offending provision shall be deemed amended and reformed to the fullest extent legally permissible that would carry out the original intent of the parties.  The parties will take such actions and execute and deliver such documents as may be necessary or reasonably requested to carry out and implement the terms of this Agreement.

10. **No Re-employment / Reinstatement.** Murray specifically waives any rights that Murray may have to reinstatement and/or re-employment by any of the Company Parties and agrees not to seek or accept re-employment or future employment with any of the Company Parties. Murray agrees that this Section of the Agreement constitutes and is sufficient legal grounds for denying employment, or termination of employment, should Murray later apply to work for, or be hired in the future by any of the Company Parties. Notwithstanding the foregoing, if any of the Company Parties hereafter acquires a business or entity for whom Murray is then actively employed on an assignment, this Section shall not be applied to require or result in the dismissal of Murray from such employment on such assignment.  Murray agrees and understands that application of the terms of this Section 10 shall not be grounds for a retaliation or similar claim under any federal, state, or local law or regulation.

[Remainder of Page Intentionally Left Blank]

- 9 -

**IN WITNESS WHEREOF**, the parties have entered into this Agreement as of the day and year written below.

Signature: _Gaylon Wade Murray_ (signed)    Date Signed: 04 / 03 / 2024
Printed Name:   Gaylon Wade Murray


Print Name: _____

Delta Asphalt of Arkansas, Inc.

By_____

- 9 -

Doc ID: 4f8a4f7f6ee5833533978788acfd9a1c68b09cc6

- 9 -

**IN WITNESS WHEREOF**, the parties have entered into this Agreement as of the day and year written below.

Signature: _____        Date Signed: _____
Printed Name:   Gaylon Wade Murray


Print Name: __Brad Marotti_____

Delta Asphalt of Arkansas, Inc.

By_____